Has Congress power to conscript citizens to serve as agriculturists, and thereby take from the State the right to require them to perform "Home Guard" duty?
The only doubt I have had is as to the first branch of the question, i.e., can the Confederate States, while one part of our citizens are put in the field to fight with muskets, put another part in the field to work with plows?
My brothers Battle and Manly are clear in the opinion that this may be done under the war power, to raise and support armies; and, indeed, it seems to fall within the principles of the decision in Gatlin v. Walton,ante, 325, that, in case of necessity, the power of the Confederate States is unlimited so far as the citizens are concerned. It is my duty to conform to that decision.
Upon the other branch of the question I have no difficulty. It is decided in Johnson v. Mallett, ante, 410, that the war power of the Confederate States, so far as the States are concerned, is limited by their rights in regard to civil officers; and the question is narrowed to this, Is there also a limitation on the war power of the Confederate States in regard to the rights of the States under their war power? I think not, for the reason that the States have, by the provisions of the Constitution, subordinated the State war power to that of the Confederate States. "No State shall engage in war, unless actually invaded, or in such imminent danger as will not admit of delay." "Congress shall have power to call forth the militia, etc." — the whole if necessary. So the war power of a State is secondary, and imposes no limitation on that of the Confederate States. It follows that, although the State may have, as in this instance, put citizens in the Home Guard, such action of the (425) State is subject to the future action of the Confederate States, and the latter may rightfully take men out of the "Home Guard" of a State in order to put them in the service of the Confederate States, under their paramount war power.
These "agricultuists" are as fully in the service of the Confederate States, under the war power, as if they were fighting in the army. They are, in the first place, conscripted for the army, then exempted for thepurpose of putting them in the service as agriculturists. This was done in order to give them an election to serve with a musket or with a plow. But that does not affect the question; nor is it, in my judgment, at all varied by the circumstance that those having fifteen slaves are exempted directly
by the act, and others are exempted or detailed by the President *Page 273 
in his discretion, under the authority of the act; for the point is, they are all put in the service of the Confederate States as agriculturists, under the war power, and a State has no right to interfere with, or impair, the exercise of its war power.
Whether men are to work themselves in order to raise provisions for the army, or are to "manage and oversee" fifteen slaves, so as to make them work for that purpose, it is clear that in either case their efficiency as agriculturists for the Government will be impaired if they are required to do duty in the Home Guard.
I concur with Judge Battle in the opinion that the petitioner is entitled to a judgment of discharge.